**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL AMATO, *et al.*, | : | 3:20-cv-00464-MPS |
| *Plaintiffs*, | : | |
| v. | : | |
| MAYOR JUSTIN ELICKER, *et al.* | : | |
| *Defendants*. | : | August 12, 2020 |

**Defendant Governor Lamont's Reply Memorandum in Support of his Motion to Dismiss Plaintiffs' Second Amended Complaint**

**I.   Plaintiffs Have Either Explicitly or Implicitly Conceded that they Lack Standing to Bring Nearly All of their Claims**

The Governor argued that this Court's prior ruling denying Plaintiffs' motion for preliminary injunctive relief coupled with Plaintiffs' failure to use their opportunities to amend to cure the defects in Plaintiffs' standing that this Court identified in its ruling established that Plaintiffs have not met their burden to show standing. *Defendant Governor Lamont's Memorandum in Support of his Motion to Dismiss Plaintiffs' Second Amended Complaint*, pp. 10-13 (ECF No. 48-1) ("*MIS*"). In response, Plaintiffs explicitly concede that they lack standing for several of their claims and implicitly concede that they lack standing for nearly all of their others. *See Memorandum of Law in Opposition to Governor Lamont's Motion to Dismiss Plaintiff's* [sic] *Second Amended Complaint*, pp. 11-13 (ECF No. 52) ("*Opp.*").

Specifically, Plaintiffs explicitly "concede that the constitutional rights that they assert in Counts Eight through Ten are personal rights guaranteed to individuals only, not corporations" and that the LLC Plaintiff lacks standing to pursue those claims. *Id*. at 13. Plaintiffs implicitly concede that the individual Plaintiffs lack standing to pursue Count Eleven, and that all Plaintiffs lack standing to pursue Counts Ten and Twelve—the Governor explicitly argued that (as this Court already held) the individual Plaintiffs lacked standing to pursue any claims based on financial injuries to the LLC Plaintiff and that "the LLC cannot bring the substantive due process claims referenced in Counts Ten and Twelve." *MIS*, p. 12. Plaintiffs offer no argument to the

1

contrary on either of those points, explicitly concede that the LLC lacks standing to bring Count Ten, and offer no basis to treat Count Twelve differently.

Plaintiffs have fallen far short of meeting their burden to establish standing. This Court and other "[c]ourts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them." *Thurmand v. Univ. of Connecticut*, 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019) (Hall, J.). That principle applies with equal force to Plaintiffs' failure to address defects in their standing; although federal courts are "obliged to examine standing *sua sponte*" to identify defects in their jurisdiction, plaintiffs can—and do— abandon arguments in favor of standing and Plaintiffs did so here. *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001) (Per Curiam) (holding that the principle that the court must examine standing *sua sponte* even on appeal did not extend to arguments in favor of standing).

That leaves the individual Plaintiffs' claims in Counts Eight and Nine, and the LLC Plaintiff's claims in Count Eleven. This Court found that the individual Plaintiffs' allegations to support their First Amendment claims in Counts Eight and Nine of their Original Complaint were insufficient to support standing, Plaintiffs failed to make any amendments that even arguably cured those defects, the Governor pointed out Plaintiffs' failure to cure, and Plaintiffs made no argument in response. *See MIS*, pp. 12-13 & n.13. That warrants dismissal of those claims. *See, e.g.*, *Thurmand*, 2019 WL 369279, at *3. The sole claim against the Governor for which Plaintiffs have not conceded they lack standing is the LLC Plaintiff's taking claim in Count Eleven. This Court lacks jurisdiction over that claim for other reasons that will be discussed below.

II. **Plaintiffs' Opposition Does Nothing to Undermine the Governor's Eleventh Amendment Argument**

Established Supreme Court and Second Circuit precedent holds that the Eleventh

Amendment bars Plaintiffs' official capacity claims against the Governor. *See MIS*, pp. 6-8. To the extent Plaintiffs' response to the Governor's argument based on that precedent can be understood, it should do nothing to save Plaintiffs' claims from dismissal. *See Opp.*, pp. 4-9.

Plaintiffs start with an argument that *Alden v. Maine*, 527 U.S. 706 (1999), effectively overruled over a century of Supreme Court precedent *sub silentio* and established "that the Fourteenth Amendment supersedes Eleventh Amendment immunity." *Opp.*, p. 5. Plaintiffs do not cite a single case from any jurisdiction reaching that conclusion. That is because it is obviously wrong. *Alden* expanded states' sovereign immunity by holding as a matter "of first impression," that the Constitution did not give Congress the "authority under Article I to abrogate a State's immunity from suit in its own courts." *Alden*, 527 U.S. at 741.

Plaintiffs apparently base their argument on *Alden*'s unremarkable statement that "'[i]n adopting the Fourteenth Amendment, the people required the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution.'" *Opp.* at 5 (quoting *Alden*, 527 U.S. at 756). Plaintiffs' quotation omits an ellipsis; Plaintiffs left out the crucial remainder of the sentence, in which the Supreme Court said that the surrender it was referencing (and on which Plaintiffs rely) allowed "Congress [to] authorize private suits against nonconsenting States pursuant to its § 5 enforcement power." *Alden*, 527 U.S. at 756. That does not help Plaintiffs here. Plaintiffs apparently concede—as they must—that the Supreme Court has held that 42 U.S.C. § 1983 (on which Plaintiffs' claims are based) does not abrogate the Governor's Eleventh Amendment immunity and that this Court is bound by that precedent. *Opp.* at 6 & n.6. Therefore, Plaintiffs offer no basis to question the Governor's argument that the Eleventh Amendment bars Plaintiffs' official capacity damages claims.

That includes the LLC Plaintiff's taking claim in Count Eleven (the only claim for which

3

Plaintiffs have not conceded that they lack standing). The Governor pointed out that "[e]very 'court of appeals to have decided the question'"—including the Second Circuit—"'has held that the Takings Clause does not override the Eleventh Amendment.'" *MIS*, pp. 6-7 (quoting *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 553 (4th Cir. 2014), and citing cases including *Knight v. New York*, 443 F.2d 415 (2d Cir. 1971)). Consistent with those cases, a district court recently held that the Eleventh Amendment barred takings claims based on a Governor's COVID-19 Orders. *See id.* at 6 & n.4 (citing *Martinko v. Whitmer*, 2020 WL 3036342, at *2 n.2 (E.D. Mich. June 5, 2020)).

Plaintiffs do not address any of those cases. Rather, they assert that the Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2171 (2019), establishes that because the Fifth Amendment's taking provision "was incorporated against the states by the Fourteenth Amendment, it supersedes the Eleventh Amendment's sovereign immunity." *Opp.*, p. 8. The core problem with Plaintiffs' argument is that *Knick* had nothing to do with the Eleventh Amendment. As the cases the Governor cited pointed out, the defendant in *Knick* "was a Pennsylvania township" that was not protected by the Eleventh Amendment and *Knick* does not "suggest[ ] that a *state* is not entitled to Eleventh Amendment immunity as to a Fifth Amendment takings claim asserted in federal court." *Martinko*, 2020 WL 3036342, at *2 n.2 (emphasis in *Martinko*). In addition to the district court's decision in *Martinko*, the two circuits to have addressed the question have "held that *Knick* does not alter traditional principles of state sovereign immunity." *Bay Point Properties, Inc. v. Mississippi Transportation Comm'n*, 937 F.3d 454, 457 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) (citing *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019)). Plaintiffs have offered no reason for this Court to rule contrary to those courts, nor is any reason evident.[1] That should be fatal to

---

[1] Plaintiffs point out that the Takings Clause is self-executing, but "'the constitutionally grounded self-executing

4

Plaintiffs' taking claims in their entirety.[2]

It has long been—and remains—established that "'[t]he Eleventh Amendment bars the award of money damages against state officials in their official capacities.'" *MIS*, p. 6 (quoting *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003)). Plaintiffs' request that this Court award them "retrospective relief" in connection with "their claims for damages as a matter of law," *Opp.*, p. 8, is precisely the type of "dispute about the lawfulness of [a state official's] past actions" seeking an "award of money damages" that the Eleventh Amendment "prohibit[s]." *Green v. Mansour*, 474 U.S. 64, 73 (1985).

Plaintiffs' argument should fare no better to the extent it relies on the *Ex Parte Young* doctrine. *Opp.*, p. 8. As a threshold matter, the *Ex Parte Young* doctrine is not applicable to taking claims; "[t]he Supreme Court has held that '[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking.'" *Atwood v. Strickler*, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). As another court recently held in the context of a taking challenge to a Governor's COVID-19 Order, "even if the Stay at Home Order was 'a plain, palpable invasion' of Plaintiffs' Fifth Amendment rights [under *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11 (1905))], Plaintiffs would not be entitled to the requested [injunctive] relief because damages—not injunctive relief—are the proper remedy for a taking." *Prof'l Beauty Fed'n of California v. Newsom*, 2020 WL 3056126, at *8 (C.D. Cal. June 8, 2020).

More broadly, Plaintiffs acknowledge that all of their claims in their operative Complaint

---

nature of the Takings Clause does not alter the application of the Eleventh Amendment.'" *Hutto*, 773 F.3d at 553 (quoting *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954 (9th Cir. 2008), and citing other cases).

[2] Plaintiffs correctly do not dispute that official capacity claims "are the only taking claims available." *Gov's MIS*, p. 30 n.20. Therefore, if this Court agrees that the Eleventh Amendment bars Plaintiffs' official capacity taking claims, that requires dismissal of Plaintiffs' taking claims in their entirety.

are based on Orders that have been superseded. *See id.* at 9. "[T]he Eleventh Amendment forbids federal courts from entering retroactive injunctive relief to remedy past violations of law which have been mooted by an amendment to a federal law." *Messier v. Southbury Training Sch.*, 1999 WL 20910, at *20 (D. Conn. Jan. 5, 1999) (Burns, J.) (citing *Green*, 474 U.S. at 73, and *Marbley v. Bane*, 57 F.[3]d 224, 232 (2d Cir. 1995)). That logic applies with equal force here. *See, e.g.*, *Marbley*, 57 F.3d at 232 (affirming the application of *Green* where the "state rescinded" the challenged policy during the course of litigation). To the extent (if any) Plaintiffs' claims could be viable despite the changes to the Orders, Plaintiffs could have sought leave to supplement their Complaint to allege facts that would support their claims. Plaintiffs failed to do so, and offer no explanation for that failure. The Eleventh Amendment bars their claims.[3]

### III. Plaintiffs' Opposition Does Nothing to Undermine the Governor's Argument that Plaintiffs' Prospective Claims are Moot

The Governor argued that Plaintiffs' prospective claims are moot, with citations to several Second Circuit decisions under analogous circumstances outside the COVID-19 context as well as multiple district court decisions holding challenges to Governors' COVID-19 Orders moot. *MIS*, pp. 8-10. Plaintiffs do not address any of those cases in their Opposition.

Instead, Plaintiffs offer two arguments. Both lack merit. First, Plaintiffs assert that their claims are not moot because "[t]he issue in this case is not whether the Governor possesses the lawful authority to order a specific numeric limit on the number of people who can congregate in public, but whether he has the authority to issue such a mandate regardless of the number, whether the number be two, five, ten or 100." *Opp.*, p. 10. As an initial matter, this argument is limited to Plaintiffs' claims based on public gatherings—Plaintiffs apparently concede that their claims based on other limitations posed by the challenged Orders but now superseded are moot.

---

[3] Plaintiffs expressly concede that the Eleventh Amendment bars their claims to the extent they are based on state law and simply "preserve this issue for appeal." *Pls' Opp.*, p. 8.

In any event, Plaintiffs' operative Complaint challenges a putative "ban[ ]" on "all gatherings of people that exceeded five in number, except for religious and social gatherings" that no longer exists. *Second Amended Complaint*, ¶ 22 (ECF No. 41) ("*2dAC*"). Plaintiffs cannot avoid dismissal by re-writing their Complaint in their Opposition.

Plaintiffs' second argument is that, even if their challenges are moot, they come within the exception to mootness for issues that "are capable of repetition yet evading review." *Opp.*, p. 10. The Governor cited several cases rejecting similar arguments, and Plaintiffs do not address— let alone persuasively distinguish—any of them. The capable of repetition yet evading review "exception to mootness principles is severely circumscribed." *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998). Plaintiffs have offered no basis to find that it applies here. Speculation is not enough; both the Supreme Court and the Second Circuit have made clear that it will not "suffice to hypothesize the possibility that at some future time, under circumstances that could only be guessed at now, the parties could theoretically become embroiled in a like controversy once again." *Id.*; *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (Per Curiam).

### IV. Plaintiffs' Opposition Does Nothing to Undermine this Court's Correct Conclusion that *Jacobson* Controls

The Governor pointed out that this Court has already found that *Jacobson* controls here and that this Court's decision was consistent with both the "chorus of other federal courts" that have applied *Jacobson* in the context of COVID-19 Orders and the multiple Circuit courts that have granted mandamus relief where district courts failed to apply *Jacobson*. *MIS*, pp. 13-14. Plaintiffs disregard that authority and call the Governor's (and by extension this Court's) reliance on *Jacobson* "grossly misplaced." *Opp.*, p. 10. Like many of Plaintiffs' other arguments, this one disregards the foundational principle that "[f]ederal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court." *Wallace v. Jaffree*, 472 U.S. 38, 47

7

n.26 (1985) (quotation marks omitted) (citing *Hutto v. Davis*, 454 U.S. 370, 375 (1982)). Regardless of what Plaintiffs think of *Jacobson*, it controls here.

**V.     Plaintiffs' First Amendment Claims Would Fail on their Merits Even Without the Latitude *Jacobson* Gives the Governor in Responding to the COVID-19 Pandemic**

Plaintiffs represent that "Governor Lamont relies wholly on *Jacobson*." *Opp.*, p. 14. That is false. The Governor noted that "[t]his Court has already correctly found that Plaintiffs' First Amendment association and assembly claims would fail even under traditional First Amendment analysis," that Plaintiffs' amendments did not cure those defects, and that this Court should therefore dismiss Plaintiffs' claims, "even without reliance on *Jacobson*." *MIS*, p. 15.

Plaintiffs' Opposition does not explicitly address this Court's prior analysis, or attempt to explain why this Court's prediction that "Plaintiffs are not likely to succeed on the merits of either their assembly or their association claim" was incorrect. *Amato v. Elicker*, 2020 WL 2542788, at *9 (D. Conn. May 19, 2020). Nor is any credible argument evident. The challenged "restrictions are content neutral," they are even more "'narrowly tailored'" now than they were at the time of this Court's initial ruling, and they continue to "leave[ ] open alternative channels of expression." *Id*. at *11 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

That alone should be dispositive, but—despite multiple opportunities—Plaintiffs also failed to cure the other defects in their First Amendment claims. Specifically, Plaintiffs did not allege any facts concerning the nature or purpose of the conduct in which they intended to engage. Tellingly, Plaintiffs failed to even reference—let alone persuasively distinguish—the binding Second Circuit precedent the Governor discussed that holds that Plaintiffs' association claims should be dismissed "because Plaintiffs 'do[ ] not allege' that they were 'engaged in any expressive conduct' impacted by the Orders." *MIS*, p. 19 (quoting *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015)). Plaintiffs also utterly fail to reckon with this Court's correct

observation that "the Second Circuit has specifically held that the relationships between a restaurant owner and her customers or employees are not protected by the First Amendment." *Amato*, 2020 WL 2542788, at *12 (citing *Michaelidis v. Berry*, 502 F. App'x 94, 96–97 (2d Cir. 2012) (Summary Order)). Plaintiffs' First Amendment claims against the Governor would fail, even if the Governor did not have the latitude *Jacobson* grants him in this pandemic.

**VI.    Plaintiffs' Opposition Does Nothing to Undermine the Governor's Argument that this Court Should Dismiss Plaintiffs' Right to Pursue a Living Claims**

Plaintiffs characterize their claims in Count Ten as based on the "fundamental unenumerated right to pursue an honest living" the Supreme Court recognized "in *Dent v. West Virginia*." *Opp.*, p. 14. By its terms, the right Plaintiffs claim is subject to "'such restrictions as are imposed upon all persons of like age, sex, and condition.'" *Id.* (quoting *Dent v. West Virginia*, 129 U.S. 114, 121-22 (1889)). Plaintiffs do not allege any that the Governor subjected them to any restrictions that were not also imposed on everyone else of Plaintiffs' age, sex, and condition. That requires dismissal of Plaintiffs' claims to the extent they are based on *Dent*. *See, e.g.*, *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 459 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018).

That should be dispositive, but Plaintiffs send mixed messages regarding the basis for their claims. On the one hand, Plaintiffs explicitly base their claims on *Dent*. On the other hand, Plaintiffs characterize their claims as based on a substantive due process[4] "right to pursue an honest living." *2dAC*, ¶ 76. The Governor argued that such a right does not appear in *Dent* or, for that matter, anywhere else. *MIS*, p. 24. Plaintiffs apparently concede the "truth" of that contention, but argue that this Court "still has an obligation to conduct an analysis" of whether to create such a right. *Opp.*, p. 25. To the extent *Dent* spoke in this area, this Court lacks the

---

[4] Plaintiffs concede that Supreme Court precedent bars Count Ten to the extent it is based on the Privileges or Immunities Clause and this Court is bound to dismiss that aspect of it. *Pls' Opp.*, pp. 28-29.

authority to create a broader right. *See, e.g.*, *Wallace*, 472 U.S. at 47 n.26.

**VII.     Plaintiffs' Opposition Does Nothing to Undermine the Governor's Argument that this Court Should Dismiss Plaintiffs' Taking Claims**

Plaintiffs do not dispute that the Fifth Amendment itself is not applicable here. *See MIS*, pp. 28-29. That requires dismissal of Count Eleven. *See, e.g.*, *Thurmand*, 2019 WL 369279, at *3. This Court should also dismiss any taking claims Plaintiffs purport to assert through the Fourteenth Amendment to the extent it incorporates the Fifth Amendment. Puzzlingly, Plaintiffs represent that the Governor did not challenge any regulatory taking claims they assert. *Opp.*, p. 29. Again, that is false. *See MIS*, pp. 29-33. Plaintiffs' Opposition otherwise distorts the Governor's takings argument and the precedent on which the Governor's argument relies.[5] Plaintiffs make no effort to identify their claimed property interest, make the odd argument that "merely detroy[ing]" property is less of a taking than temporary limiting property's use, and distinguish some of the Supreme Court precedent the Governor relied on because it putatively has "only been applied in war time under fortunes of war reasoning[6]," *Opp.*, pp. 30-31, without acknowledging that the Governor pointed out that the Supreme Court has applied the same principle "to actions taken by a state to limit the spread of disease outside the war context." *MIS*, p. 31 (citing *Miller v. Schoene*, 276 U.S. 272, 277-81 (1928)).[7]

Respectfully submitted,

---

[5] Those are far from the only distortions in Plaintiffs' filings. For example, in their injunction materials, Plaintiffs distorted the Governor's Orders. That continues here. Plaintiffs represent that the Orders do not require the counting of the number of "people in a grocery store at any given time," *Opp.*, p. 21, when—in fact—under the challenged Orders and related guidance "occupancy of most stores (including grocery stores) is 'capped at 50% of store capacity' and '[a]t [the] entrance, staff will maintain a count of the number of customers entering and exiting stores.'" *Defendant Governor Lamont's Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction*, p. 31 (ECF No. 21) (quoting exhibits).

[6] As is their wont, Plaintiffs also argue that this Court should adopt the position of the Supreme Court dissent, disregarding that this Court is bound by the majority opinion. *Opp.*, p. 31.

[7] Although space constraints preclude further analysis, all of Plaintiffs' other arguments—including their arguments that the Governor exceeded the latitude *Jacobson* grants him and their immunity arguments—lack merit for the reasons set forth in the Governor's other filings.

DEFENDANT

GOVERNOR NED LAMONT

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
    Robert J. Deichert (ct24956)
    Philip Miller (ct25056)
    Assistant Attorneys General
    Attorney General's Office
    165 Capitol Avenue
    Hartford, CT 06106
    860-808-5020 (phone)
    860-808-5347 (fax)
    Robert.Deichert@ct.gov
    Philip.Miller@ct.gov
    *Attorneys for the Governor*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 12, 2020, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                              */s/ Robert J. Deichert*
                              Robert J. Deichert
                              Assistant Attorney General