## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL AMATO, JOY MONSANTO, and 50's
LOUNGE, LLC,
    *Plaintiffs,*

    v.

MAYOR JUSTIN ELICKER, GAGE FRANK, and
GOVERNOR NED LAMONT,
    *Defendants.*

No. 3:20cv464 (MPS)

## RULING ON GOVERNOR LAMONT'S MOTION TO DISMISS

The COVID-19 virus has caused a global pandemic of unprecedented scale. In Connecticut, more than 7,800 people have died from the virus. https://portal.ct.gov/coronavirus (last accessed March 29, 2021). On March 10, 2020, Governor Lamont declared a public health emergency and civil preparedness emergency under Conn. Gen. Stat. §§ 19a-131a and 28-9. Plaintiffs, Michael Amato, Joy Monsanto, and their restaurant, 50's Lounge, LLC, have sued the Governor in his individual and official capacity challenging executive orders he issued in March 2020 in an attempt to reduce the spread of the virus.[1] In pertinent part, the orders at issue restricted the size of social and recreational gatherings and required that restaurants serve food and beverages only for off premises consumption. Executive Orders 7, 7D, 7G, and 7N. The Plaintiffs allege that the orders violate their right to assembly under the First Amendment, and Article First, § 14 of the Connecticut Constitution (count 8); right to freedom of association under the First, Ninth, and Fourteenth Amendments, and Article First, §§ 8 and 14 of the Connecticut Constitution (count

---

[1] Plaintiffs also assert claims against Mayor Elicker and Gage Frank, who have filed a motion to dismiss. That motion is addressed in a separate ruling.

9); right to pursue a living under the Privileges or Immunities and Due Process Clauses of the Fourteenth Amendment and Article First, § 8 of the Connecticut Constitution (count 10); right to receive compensation for a taking of property under the Fifth and Fourteenth Amendments, and Article First, § 11 of the Connecticut Constitution (counts 11 and 12). They seek compensatory and punitive damages, a declaratory judgment that the restrictions are unconstitutional, and an injunction staying their enforcement. Governor Lamont moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. ECF No. 60. For the reasons set forth herein, the motion is granted.

## I.     PROCEDURAL HISTORY

In April 2020, the Plaintiffs filed a motion for a temporary restraining order and preliminary injunction seeking to stay the enforcement of Governor Lamont's executive orders. ECF No. 11. On May 19, 2020, I denied the motion. ECF No. 32. The Plaintiffs thereafter filed a Second Amended Complaint, ECF No. 41, and in September 2020, filed the operative Third Amended Complaint. ECF No. 62. Governor Lamont incorporates in his presently pending motion to dismiss, ECF No. 60, the arguments set forth in his prior submissions, ECF Nos. 22, 48, 54, and the Plaintiffs in their opposition do the same. ECF Nos. 52, 63.

## II.    FACTUAL ALLEGATIONS

The Third Amended Complaint sets forth the following factual allegations, which the Court accepts as true for purposes of this ruling.

Joy Monsanto and Michael Amato own and operate a restaurant in the "Westville" neighborhood of New Haven called the 50's Lounge, LLC. ECF No. 62 at ¶¶ 9-10. As the coronavirus began to take hold in Connecticut, they decided to close the restaurant on March 15, 2020. *Id.* at ¶ 13.

Beginning March 12, 2020, Governor Lamont issued a series of executive orders:[2]

Executive Order 7, issued on March 12, 2020, prohibited "gatherings of 250 people or more for social and recreational events."[3] *Id.* at ¶ 19. Executive Order 7D, issued on March 16, 2020, went further, prohibiting gatherings of 50 or more people. It also placed limits on restaurant, bar, and private club operations, requiring that "any restaurant or eating establishment and any location licensed for on-premise consumption of alcoholic liquor . . . shall only serve food or non-alcoholic beverages for off-premises consumption." Executive Order 7D at 2. ECF No. 62 at ¶ 20. Executive Order 7G, issued March 19, 2020, modified Executive Order 7D to allow restaurants and bars to sell alcohol for off-premises consumption provided it was sold in a sealed container and accompanied by an order of food. *Id.* at ¶ 21.

Executive Order 7N, issued March 26, 2020, stated that "social and recreational gatherings . . . of six (6) or more people . . . are prohibited throughout the State of Connecticut." Executive Order 7N at 4. The order "d[id] not apply to government operations, private workplaces, retail establishments, or other activities that are not social or recreational gatherings." ECF No. 62 at ¶ 22; Executive Order 7N at 4.[4]

---

[2] The Court takes judicial notice of the contents of Governor Lamont's relevant orders. *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.")

[3] Executive Order 7 further stated that "to reduce spread of COVID-19, the United States Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommend implementation of community mitigation strategies to increase containment of the virus and to slow down the transmission of the virus, including cancellation of large gatherings and social distancing in smaller gatherings[.]"

[4] The executive orders restricting gatherings to 250 people and later to 50 people were superseded on March 26 by Executive Order 7N, which prohibited social and recreational gatherings of six or more people. Executive Order 7N at 4 ("[T]he prior order set forth in Executive Order No. 7D [regarding gatherings] . . . is hereby amended and modified . . . .").

The Plaintiffs' voluntary closure of their restaurant on March 15, 2020 was a temporary measure to allow them to evaluate whether they could safely operate their business. ECF No. 62 at ¶ 23. They decided that they would "fully reopen their business approximately a week" after they closed it. *Id.* at ¶ 24. After further consideration, however, the Plaintiffs "realized that they could not reopen their business without violating Defendant Lamont's executive orders and risking substantial penalties including arrest, incarceration, fines, and the revocation of their business licenses." *Id.* at ¶ 25. The Plaintiffs "have lost, and are losing, an unsustainable amount of approximately $5,000 per week due to Defendant Lamont's prohibitory bar on their reopening." *Id.* at ¶ 26. Defendant Lamont's orders have made it financially impossible for the Plaintiffs to continue to operate their business profitably. *Id.* at ¶ 27. The financial loss that Defendant Lamont's orders have imposed on the Plaintiffs has crippled their ability to remain in business, jeopardizing their ability to pay their employees and continue to exist as a business. *Id.* at ¶ 28.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is proper where "the district court lacks statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court may consider evidence outside the pleadings when deciding whether subject matter jurisdiction exists. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### B.    Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine

whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id*., and "must draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co*., 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp*., 770 F.3d 170, 177 (2d Cir. 2014).

## IV.    DISCUSSION

### A.    Rule 12(b)(1) Motion

#### 1.    *Plaintiffs' Claims for Prospective Relief*

Governor Lamont argues that the Plaintiffs' claims for declaratory and injunctive relief should be dismissed as moot because the executive orders at issue are no longer in effect. ECF No. 48-1 at 8. The Governor points out that the executive orders at issue were modified in several respects. As of June 16, 2020, indoor dining was permitted. Executive Order 7ZZ. In addition, indoor gatherings of up to 25 people were permitted and outdoor gatherings of up to 100 people were permitted. ECF No. 48-2 at 29, DECD Sector Rules.

Additional developments ensued after the Governor's motion was briefed. On March 19, 2021, the Department of Economic and Community Development ("DECD") issued updated rules applicable to "all businesses/organizations" that "[c]apacity limits are now up to 100%, subject to

social distancing requirements."[5]    https://portal.ct.gov/DECD/Content/Coronavirus-Business-Recovery/Sector-Rules-for-Reopen.  Further, for restaurants, "6 ft. spacing or non-porous barrier continue to be required between tables, with an 8-person maximum table capacity" and "[a]ll restaurants and indoor recreation continue to be subject to an 11:00 pm closing time."  *Id.*

Under the "case or controversy" requirement of Article III of the Constitution, "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet,* 260 F.3d 114, 118 (2d Cir. 2001). *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) (actual controversy must be "extant at all stages of the review, not merely at the time the complaint is filed.")  "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013) (internal quotation marks omitted).  Because the executive orders are no longer in effect, the Governor argues, Plaintiffs' claims for equitable relief are moot.

But a defendant's "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). A voluntary change of conduct renders a case moot if the defendant demonstrates both that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). A defendant claiming mootness on the basis of voluntary cessation "bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted).

---

[5] The DECD rule further stated that "[f]ood service continues to be required with alcohol service – bars that only serve beverages must remain closed."  This provision does not apply to the Plaintiffs, who allege that their establishment is a restaurant.  ECF No. 62 at ¶¶ 11 - 12.

Governor Lamont concedes that he cannot say with certainty that it will never be necessary to re-impose restrictions in the future. ECF No. 48-1 at 9. Because it cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur," *Am. Freedom Def. Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016) (internal quotation marks omitted), Governor Lamont cannot meet his burden at the first step of the voluntary cessation analysis. *See Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 494–95 (N.D.N.Y. 2020) (Plaintiffs' claims were not moot under voluntary cessation exception where Defendants made no commitment that they would not reinstate the shutdown orders should COVID-19 spread increase); *Pro. Beauty Fed'n of California v. Newsom*, No. 2:20-CV-04275, 2020 WL 3056126, at *4 (C.D. Cal. June 8, 2020) (defendant's voluntary cessation did not moot Plaintiffs' challenges to COVID-19 restrictions because "the State is not constrained from later reenacting the harsh restrictions which existed at the beginning of this pandemic"); *Connecticut Citizens Def. League, Inc. v. Lamont,* 465 F. Supp. 3d 56, 69 (D. Conn. 2020) (plaintiffs' request for injunctive relief was not moot under the voluntary cessation doctrine where there were no assurances that the Governor would allow the resumption during the COVID-19 pandemic of fingerprint checks, which are required to acquire, possess or carry a handgun). The motion to dismiss Plaintiffs' claims for declaratory and injunctive relief as moot is denied.[6]

### 2. *Official Capacity Damages Claims*

Governor Lamont next argues that the Court should dismiss the damages claims against him in his official capacity because they are barred by the Eleventh Amendment. ECF No. 48-1

---

[6] Even if the claims for prospective relief were moot, because the Plaintiffs seek damages, the Court would still have to proceed to consider the merits of the Plaintiffs' claimed constitutional violations. *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health*, 532 U.S. 598, 608–09 (2001) ("so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case.")

at 6.

"It is well settled that the Eleventh Amendment bars suits for money damages against state officials acting in their official capacities." *Sherman v. Cook*, No. 3:20CV1485(SRU), 2021 WL 311283, at *3 (D. Conn. Jan. 29, 2021). *See Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).[7] The Plaintiffs' claims for money damages against Governor Lamont in his official capacity are dismissed.

   3.    *Standing*

Governor Lamont challenges the Plaintiffs' standing. To have standing to sue in federal court, a plaintiff must show (1) injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief. *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (emphasis omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Particularized injuries "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, ___U.S.___, 136 S. Ct. 1547, 1548 (2016) (citation omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* At the pleadings stage, plaintiffs "must 'clearly . . . allege facts' demonstrating each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Governor Lamont argues, and Plaintiffs do not dispute, that the 50's Lounge LLC lacks standing to assert the constitutional claims asserted in counts 8, 9 and 10. ECF No. 48-1 at 11-12, ECF No. 52 at 13. By the same token, the individual plaintiffs lack standing to pursue any claims

---

[7] The Court declines the Plaintiffs' invitation to revisit this well-established legal principle, and to "hold that the Fourteenth Amendment supersedes Eleventh Amendment immunity." ECF No. 52 at 5.

premised on the financial injuries described in the complaint, including the takings claims set forth in counts 11 and 12. Only the 50's Lounge, LLC has standing to recover for those injuries. ECF No. 48-1 at 10. *See Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) ("[A]bsent a direct individual injury, a company's member lacks standing to sue for an injury to the company"); *O'Reilly v. Valletta*, 139 Conn. App. 208, 214 (2012) ("a member or manager [of an LLC] . . . may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company."); *Rivera-Maurice v. Lamont*, No. X06UWY206056982, 2020 WL 8455542, at *5 (Conn. Super. Ct. Dec. 7, 2020) (plaintiffs lack standing to assert claims arising from harms allegedly suffered by their corporate entities). Therefore, I dismiss counts 8, 9 and 10 (rights to assemble, associate, and pursue a living) as to 50's Lounge, LLC and the Takings claim and any other claims based on financial injuries as to the individual Plaintiffs.

Governor Lamont also argues that even the individual Plaintiffs lack standing to pursue their First Amendment claims because they have failed to allege facts suggesting that they have suffered an injury-in-fact. ECF No. 48-1 at 12.

"Two types of injuries may confer Article III standing for First Amendment challenges." *Libertarian Party of Connecticut v. Merrill*, No. 3:15CV1851(JCH), 2016 WL 10405920, at *4 (D. Conn. Jan. 26, 2016). "The first occurs when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "The second occurs when a plaintiff is 'chilled from exercising her right to free expression or foregoes expression in order to avoid enforcement consequences.'" *Id.* (quoting *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014)) (internal quotation marks and citation omitted).

The Plaintiffs allege neither of these injuries. Rather, they state legal conclusions that "Defendant Ned Lamont's orders limiting the number of people who may attend a gathering are unconstitutional restrictions on the Plaintiffs' liberty and right to assemble under the First Amendment," ECF No. 62 at ¶ 65, and on the Plaintiffs' liberty and "right to freely associate with their customers and their friends." *Id.* at ¶ 68. Despite amending their complaint three times in the face of the Governor's argument that they lacked standing, Plaintiffs have not provided specific factual allegations as to how they have been affected or their constitutional right burdened. *Seidemann v. Pro. Staff Cong. Loc. 2334, Am. Fed'n of Tchrs. AFL-CIO*, No. 20-460, 2021 WL 79162, at *1 (2d Cir. Jan. 11, 2021) ("[S]tanding requires more than a mere allegation that an unlawful state of affairs exists. To have standing, a plaintiff must show that he or she has suffered an injury in fact.") The Plaintiffs' complaint simply does not show how the executive orders impinged on their First Amendment rights – there are no allegations as to their attempts to assemble or to associate with anyone. Nowhere do they allege facts suggesting that they "inten[ded] to engage in a course of conduct arguably affected with a constitutional interest" or that any protected activity has been chilled or forgone. They therefore have not alleged an "actual" or "imminent" injury. Without any specific allegations of harm, Plaintiffs have not pleaded the "necessary allegations of demonstrable, particularized injury" required to assert First Amendment claims. *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

In short, Plaintiffs lack standing as to all their claims against Governor Lamont except for the LLC's takings claims and the individual Plaintiffs' claim in count 10 that the Governor violated their right to pursue a living; as to the latter, although the parties do not address the issue, the allegations that Plaintiffs can no longer operate the 50's Lounge as they did previously are sufficient to confer standing for such a claim.

**B.     12(b)(6) Motion**

Even if the Plaintiffs had adequately pleaded standing as to their First Amendment claims, those claims would still have to be dismissed because they do not meet the standard of plausibility. The takings and right-to-pursue-a-living claims likewise do not state plausible claims.

*1. First Amendment Claims*

In counts 8 and 9, Plaintiffs Michael Amato and Joy Monsanto allege that the orders violate their right to assemble and "right to freely associate with their customers and their friends" in violation of the First Amendment. ECF No. 62 at ¶¶ 65, 68.[8]  Governor Lamont argues that the Plaintiffs fail to state a cognizable First Amendment claim because the complaint does not allege that the Plaintiffs were engaged in any constitutionally protected expressive conduct. ECF No. 48-1 at 19.

---

[8] In addition to the First Amendment, the Plaintiffs assert their freedom of association claim in count 9 under the Ninth and Fourteenth Amendments. ECF No. 62 at ¶¶ 69, 70. However, "[t]he Ninth Amendment is not an independent source of individual rights . . . ." *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007). Plaintiffs' Ninth Amendment claim is dismissed. As to their Fourteenth Amendment claim, Plaintiffs fail to state either a substantive or procedural due process claim. With regard to procedural due process, an individual's due process rights are not violated by a law of general applicability since "the legislative determination provides all the process that is due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982); *see also Interport Pilots Agency Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) ("Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause. These constitutional due process requirements apply only where the official action is designed to adjudicate disputed facts in particular cases." (internal quotation marks and citation omitted)). The substantive due process claim also fails. "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' … or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987). However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). To the extent that the Plaintiffs allege that the restrictions violated their substantive due process rights, those allegations are subsumed by their First Amendment claim.

"To state a First Amendment claim, a plaintiff must allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment." *Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015) (citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)). "[T]he First Amendment protects conduct only if it has an expressive purpose[.]" *Salmon,* 802 F.3d at 256 (citing cases). Expressive association "protects the right of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances." *Sanitation & Recycling Indus., Inc.*, 107 F.3d at 996. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (right of expressive association "is not reserved for advocacy groups[,] [b]ut to come within its ambit, a group must engage in some form of expression[.]")[9]

"When, on the other hand, an individual engages in conduct that does not manifest an intent to convey a particularized message, the First Amendment does not come into play." *United States v. Thompson*, 896 F.3d 155, 164 (2d Cir. 2018) (internal quotation marks and citation omitted). "The Constitution does not recognize a generalized right of social association." *Sanitation & Recycling Indus., Inc.*, 107 F.3d at 996. In *City of Dallas v. Stanglin*, 490 U.S. 19 (1989), the Supreme Court held that "patrons of the same business establishment," a dance hall, were not members of an organized association, and "[m]ost [were] strangers to one another," because "the dance hall admits all who are willing to pay the admission fee." *Id.* at 24 – 25; *see also id.* at 24 ("These [social dance] opportunities might be described as 'associational' in common parlance,

---

[9] "The United States Constitution affords protection to two distinct types of association, intimate association and expressive association." *Sanitation & Recycling Indus., Inc.*, 107 F.3d 985, 995-96 (2d Cir. 1997) (internal quotation marks and citations omitted). Plaintiffs argue that the Executive Orders burden their right to expressive association. ECF No. 52 at 23 - 24.

but they simply do not involve the sort of expressive association that the First Amendment has been held to protect.") The Court observed that "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall'—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.* at 25 (holding that the Constitution does not recognize "a generalized right of 'social association' that includes chance encounters in dance halls.'").

Here, there are no allegations that the Plaintiffs were engaged in conduct protected by the First Amendment at any relevant time.[10] Insofar as the Plaintiffs operate a restaurant, there are no facts alleged from which to infer that this conduct was "sufficiently imbued with elements of communication" to merit constitutional protection. *Spence v. Washington*, 418 U.S. 405, 409 (1977). The Plaintiffs' claim that the executive orders infringe on their right to associate with their customers, ECF No. 62 ¶ 68, falls outside First Amendment associational protection. *See Michaelidis v. Berry*, 502 F. App'x 94, 96-97 (2d Cir. 2012) (holding that relationships between plaintiffs and "their restaurant customers, and their employees are not sufficiently intimate to implicate [First Amendment] protection"); *see also Sanitation and Recycling Indus., Inc.*, 107 F.3d at 996 (association right "generally will not apply, for example, to business relationships, chance encounters in dance halls, or paid rendezvous with escorts." (internal citations omitted)). The freedom of expressive association encompasses the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress

---

[10] The complaint does allege that, at some unspecified point in the past, 50's Lounge has "hosted events for political opponents" of Mayor Elicker, but it nowhere suggests that any of those activities took place at any time associated with the Governor's orders or that Plaintiffs sought to engage in those activities at any time in 2020 or 2021. See ECF No. 62 ¶ 12 ("Since 2017, 50's Lounge has served the community without incident or controversy and established a reputation for affordable fine-dining in an area once infamous for dereliction. The establishment has also hosted events for political opponents of the Defendant, Mayor Justin Elicker.")

of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618 (1984). The complaint contains no suggestion that the Plaintiffs assembled or associated with friends and/or customers at the restaurant (or elsewhere) for these purposes or that they sought to do so. Because the complaint is bereft of any allegations that the Plaintiffs were "engage[d] in some form of expression," *Boy Scouts of America*, 530 U.S. at 648, the Plaintiffs fail to state a claim under the First Amendment.

In any event, even if the Plaintiffs had engaged in protected activity, their claim would fail because the challenged executive orders do not violate the First Amendment.[11]

---

[11] The Court applies the traditional tiers of scrutiny to Plaintiffs' First Amendment claims rather than the more deferential standard articulated in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), a case discussed in the Court's ruling on the Plaintiffs' TRO/PI motion that dealt with a state law imposing a fine for the failure to obtain a smallpox vaccine. After the Court issued the TRO/PI ruling in this case, the Supreme Court and the Second Circuit declined to apply the deferential standard set forth in *Jacobson* to restrictions on religious gatherings that singled out houses of worship.

In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Supreme Court granted temporary injunctive relief to New York-based religious entities as to Governor Cuomo's capacity limits on in-person religious services. —— U.S. ——, 141 S. Ct. 63, —— L.Ed.2d —— (2020). The Court assessed the plaintiffs' First Amendment free exercise claim under a traditional constitutional analysis and concluded that strict scrutiny applied because Governor Cuomo's restrictions singled out houses of worship. *Id.* at 66–68. The Court's per curiam opinion did not mention *Jacobson*. Justice Gorsuch's concurrence makes clear his position that *Jacobson* was inapplicable and that the "usual constitutional standards should apply during the current pandemic." 141 S. Ct. at 71 (Gorsuch, J, concurring). On remand, the Second Circuit indicated that *Jacobson* was not the correct legal framework for addressing First Amendment free exercise challenges to COVID-19 restrictions. *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 635 - 36 (2d Cir. 2020) ("we grant no special deference to the executive when the exercise of emergency powers infringes on constitutional rights."). Some district courts in this Circuit cabin *Roman Catholic Diocese of Brooklyn* to free exercise challenges and continue to apply *Jacobson* to challenges to COVID-19 restrictions, *see Our Wicked Lady LLC v. Cuomo*, No. 21CV0165 (DLC), 2021 WL 915033, at *3 (S.D.N.Y. Mar. 9, 2021), *Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 465437, at *4 (S.D.N.Y. Feb. 9, 2021). However, in view of the uncertainty created by *Roman Catholic Diocese of Brooklyn,* this Court applies, as it did as an alternative basis for its TRO ruling, the traditional tiers of scrutiny.

First Amendment protections are not absolute. *E.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 802 (2010) (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute."). "The case law distinguishes between content-based and content-neutral restrictions on First Amendment activities." *Murphy v. Lamont*, No. 3:20CV694(JCH), 2020 WL 4435167, at *12 (D. Conn. Aug. 3, 2020). Content-based restrictions regulate speech "because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Such regulations are subject to strict scrutiny." *Murphy*, 2020 WL 4435167, at *12.

A regulation is content-neutral if it "serves purposes unrelated to the content of expression ... even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). As I found in the TRO order, because they are not drafted or enforced in way that discriminates on the basis of content or viewpoint, the challenged Executive Orders are content-neutral. ECF No 32 at 24 - 25. Content-neutral regulations of the right of assembly are reviewed with intermediate scrutiny. *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006). "Content-neutral regulations may limit the time, place, or manner of expression—whether oral, written, or symbolized by conduct—even in a public forum, so long as the restrictions are 'reasonable,' are 'narrowly tailored to serve a significant governmental interest,' and 'leave open ample alternative channels for communication of the information.'" *Hobbs v. Cty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005). "The narrow tailoring requirement is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation" and does so without burdening "substantially more speech than necessary." *Ward*, 491 U.S. at 799 (internal quotation marks, citations, and alteration omitted).

The challenged orders satisfy the intermediate scrutiny standard. First, the State of Connecticut has a significant government interest in preserving and protecting the public health of its citizens. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID–19 is unquestionably a compelling interest.") Second, the Executive Orders are narrowly tailored to achieve the compelling government interests of slowing the spread of COVID-19 and preventing the overwhelming of the healthcare system. Governor Lamont issued the Executive Orders in specific reliance on the expertise of governmental public health agencies. *See, e.g.,* Executive Order 7N (Mar. 26, 2020) (noting that the "Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommend implementation of community mitigation strategies to increase containment of the virus and to slow transmission of the virus, including cancellation of gatherings of ten people or more and social distancing in smaller gatherings"). As to breadth, the Governor did not ban assemblies. Rather, the orders restricted - temporarily - the number of people who could assemble. The final requirement for time-place-manner restrictions requires that they leave open ample alternative channels for communication. On this point,

> [a]lthough an alternative channel for communication must be available, it is clear that [t]he First Amendment does not guarantee [plaintiffs] access to every or even the best channels or locations for their expression. The requirement that ample alternative channels exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs by the regulation at hand …. All that is required is that an alternative channel be ample—i.e., an 'adequate' channel for communication.

*Marcavage v. City of New York*, 689 F.3d 98, 107 (2d Cir. 2012) (internal quotation marks, alteration, and citations omitted). The challenged orders satisfy this requirement. Plaintiffs could engage in communication online, by telephone, or in person in groups no larger than those allowed under Executive Order 7N. The orders left open alternative channels of communication. The

Plaintiffs have failed to plausibly allege freedom of assembly and association claims. Counts 8 and 9 are dismissed.

2. *Count 10 – Right to Pursue a Living*

In Count 10, Plaintiffs allege that Governor Lamont's "order limiting the activities of businesses and deciding which businesses can remain open based on their purposes is an unconstitutional restriction that poses a substantial and undue burden on the Plaintiffs' liberty and right to pursue an honest living" in violation of the Due Process Clause.[12] ECF No. 62 at ¶ 76.

"[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). That right, however, is "subject to reasonable government regulation." *Id.* at 292. "'[B]rief interruption[s]' of work do not give rise to a Due Process claim." *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (quoting *Conn*, 526 U.S. at 292). "Instead, the Supreme Court, this Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession." *Id.*

The challenged executive orders did not deprive the Plaintiffs of their right to earn a living through their restaurant or occupational choice: they were permitted to offer both food and beverages for off-premises consumption. Further, the challenged orders were temporary and as discussed above, have been replaced by new orders that permit the Plaintiffs to operate their business, with social distancing restrictions and mandatory closing hours. *See Columbus Ale House, Inc. v. Cuomo*, No. 20-CV-4291, 2020 WL 6118822, at *5 (E.D.N.Y. Oct. 16, 2020)

---

[12] The Plaintiffs also assert this claim under the Privileges or Immunities Clause of the Fourteenth Amendment, ECF No. 62 at ¶ 75, but concede in their memorandum in opposition that such a claim is foreclosed by the *Slaughter-House Cases*, 83 U.S. 36 (1872). ECF No. 52 at 28.

(dismissing claim that COVID-19 restrictions violated plaintiff's right to conduct business or engage in a chosen profession because regulation at issue - a midnight-close rule - "does not prohibit plaintiff's operations, it just restricts them. . . . Plaintiff claims that the rule prevents it from generating enough business to stay in business. But even if that is the ultimate effect of the rule, it is not enough to constitute a violation of plaintiff's due process rights."); *Crossley v. California*, 479 F.Supp.3d 901, 915 (S.D. Cal. Aug. 17, 2020) (dismissing due process claim where regulation affecting plaintiffs' occupation did not amount to a complete prohibition of their work); *Paradise Concepts, Inc. v. Wolf*, 482 F. Supp. 3d 365, 371 (E.D. Pa. 2020) (dismissing due process claim where the COVID-related "business closure orders imposed temporary restraints on businesses. They did not deprive any individuals of their right to pursue a particular line of work. Moreover, even if there were a deprivation of one's right to work, any deprivation was temporary, and the case law strongly suggests that Substantive Due Process only extends to situations in which there is some degree of permanence to the loss of liberty or property.") (internal citation omitted)). Count 10 is dismissed.

### 3. *Counts 11 and 12 – Taking Claims*

The Plaintiff LLC brings taking claims in counts 11 and 12, alleging that Governor Lamont's orders "regulate[] the use of private property to such a degree that it effectively deprives the Plaintiff[] of the economically reasonable use of the[] property " in violation of the Fifth and Fourteenth Amendments.[13] ECF No. 62 at ¶¶ 79, 82.

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use

---

[13] Although count 12 alleges due process, the Plaintiffs' brief states that they are asserting takings claims. ECF No. 52 at 29.

without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (internal citation omitted). "There are two general categories of takings: physical takings and regulatory takings." *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220 (D. Conn. 2020). The Plaintiffs clarify in their opposition that they are claiming that the challenged orders amount to a regulatory taking. ECF No. 52 at 29 - 30.

"Regulatory takings are based on the principle that while property may be regulated to a certain extent, if a regulation goes too far it will be recognized as a taking." *Ganci v. New York City Transit Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005) (internal quotation marks and citations omitted). "There are two types of regulatory takings: categorical and non-categorical." *Martin v. Town of Simsbury*, No. 3:16CV933(KAD), 2020 WL 7230895, at *8 (D. Conn. Dec. 7, 2020). "A categorical taking occurs in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'" *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) (quoting *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002)). "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.* (internal quotation marks omitted).

The complaint fails to state a categorical takings claim because the LLC was not precluded from all economically beneficial use of the restaurant. Although indoor dining was prohibited, the executive orders expressly permitted the restaurant to continue to operate through the take-out of food and beverages.

The complaint also fails to state a non-categorical takings claim. Non-categorical takings involve "an intensive ad hoc inquiry into the circumstances of each particular case." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006). Three factors are weighed: "(1) the

economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224-25, 106 S. Ct. 1018, 89 L. Ed. 2d 166 (1986). *See Sherman*, 752 F.3d at 566 (balancing *Penn Central* factors in reviewing district court's order granting motion to dismiss). The Second Circuit has described the burden of establishing this type of regulatory taking as a "heavy" one. *Buffalo Tchrs. Fed'n*, 464 F.3d at 375.

As to the first factor, the Plaintiff LLC argues that the Court should infer that the orders "have placed a tremendously detrimental economic impact" on it. ECF No. 52 at 30. The allegations of economic impact arise from the cessation of the restaurant's operations, a decision initially made by Plaintiffs themselves, as they chose to shut down operations before the first of the challenged orders were issued. Although the complaint alleges that the Governor's orders prevented them from later reopening and ultimately cost them $5,000 per week, ECF No. 62 ¶ 26, it does not make clear how much of this loss stemmed from the LLC's apparent decision not to offer take-out service, which the orders permitted. See ECF No. 52 at 30 ("It is not economically viable for the Plaintiffs to operate their business in the manner that Governor Lamont suggests because they would operate at a substantial loss."); *McCarthy v. Cuomo*, No. 20-CV-2124 (ARR), 2020 WL 3286530, at *5 (E.D.N.Y. June 18, 2020) (denying preliminary injunction against New York Governor's COVID orders, finding takings claim unlikely to succeed on merits, and noting, in case where plaintiff chose not to stay open to offer take-out service, that "[i]f McCarthy has lost all income from his club, that is a result of a voluntary choice not to pursue alternative business models that would allow the business to remain open while complying with the regulation"). In any event, the restrictions imposed by the executive orders were temporary and plainly did not

deny the LLC all economic use of its property. *See Buffalo Tchrs. Fed'n*, 464 F.3d at 375 (finding that temporary and partial nature of wage freeze weighed against a taking).

As to the second factor, "[t]he purpose of the investment-backed expectation requirement is to limit recovery to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996). Here, the LLC asserts only that the orders were "emergency orders," appearing to suggest that the orders could not have been expected, ECF No. 52 at 30, and fails to address the fact that restaurants are highly regulated by the state. *See* Conn. Gen. Stat. § 21a-188 (authorizing inspections and permitting suspension of license); Conn. Agencies Reg. § 21a-1-16 (permitting immediate suspension of license if public health, safety, or welfare requires emergency action).

Third, and perhaps most importantly, the character of the government action weighs against finding a taking. A taking "may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978) (internal citation omitted). The orders at issue here were a temporary exercise of the State's police power to protect the health and safety of the community, which weighs strongly against finding that they constituted a taking. *See id.* Other courts have similarly concluded. *See, e.g., Daugherty Speedway, Inc. v. Freeland, No.* 4:20-CV-36-PPS, 2021 WL 633106, at *5 (N.D. Ind. Feb. 17, 2021) (noting that "'[u]nsurprisingly, courts across the country agree that the final *Penn Central* factor, the character of the disputed government action during the COVID-19 pandemic, weighs heavily in Defendants' favor," and dismissing claim that executive order closing racetrack was a taking where "the enforcement of

the executive orders benefitted the general public, who would be at greater risk of contracting COVID-19 if congregating together in close proximity") (citing cases); *TJM 64, Inc. v. Shelby Cty. Mayor*, No. 220CV02498, 2021 WL 863202, at *5 (W.D. Tenn. Mar. 8, 2021) (dismissing restaurants' claim that closure order due to COVID-19 was a regulatory taking, reasoning "it is undeniable that th[e] exercise of police powers was intended to promote the common good in response to a global pandemic that impacted public safety and the economy across the country [and] the Closure Order was an effort to adjust[ ] the benefits and burdens of economic life to promote the common good." (internal quotation marks omitted)); *Bimber's Delwood, Inc. v. James*, No. 20-CV-1043S, 2020 WL 6158612, at *17 (W.D.N.Y. Oct. 21, 2020) (denying businesses' motion for preliminary injunction as to takings claim because "the character of the government action here is a temporary exercise of the police power to protect the health and safety of the community, which weighs against a taking"); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 402 (N.D.N.Y. 2020) (racetracks' challenge to executive order prohibiting spectators or fans failed to state takings claim where the government "shifted the benefits and burdens of economic life in an effort to keep its citizens safe during a deadly pandemic. Put differently, the state has enacted permissible governmental directives used to address the current public health emergency."); *Our Wicked Lady LLC v. Cuomo*, No. 21CV0165 (DLC), 2021 WL 915033, at *6 (S.D.N.Y. Mar. 9, 2021) (restaurant capacity limits failed to constitute a taking because the "nature of the state's action [was] uncharacteristic of a regulatory taking" and the interference with the plaintiffs' property rights "adjust[ed] the benefits and burdens of economic life to promote the common good.") The complaint fails to state a plausible takings claim. Counts 11 and 12 are dismissed.

4. *Connecticut Constitution Claims*

The parties urge the Court to decline to exercise supplemental jurisdiction over the Plaintiffs' state constitutional claims because they present novel and complex issues of Connecticut law. ECF No. 48-1 at 39; ECF No 52 at 35. The parties agree that these claims - which include damages claims for violations of certain state constitutional provisions - include issues of first impression. Thus, the Court concludes that it is inappropriate to exercise supplemental jurisdiction over Plaintiffs' claims brought under the Connecticut Constitution that raise new and undeveloped issues under state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State law...."). Accordingly, the Court will grant the defendant's motion to dismiss as to the state constitutional claims, but will dismiss these claims without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (ECF No. 60) is GRANTED. Because the Court declines to exercise jurisdiction over the Plaintiffs' claims brought under the Connecticut Constitution, those claims are dismissed without prejudice. The Clerk of the Court is instructed to terminate Governor Lamont as a defendant in this case.

IT IS SO ORDERED.

Dated: April 15, 2021
   Hartford, Connecticut

_____/s/_____
Michael P. Shea, U.S.D.J.