UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL AMATO, JOY MONSANTO, and 50's
LOUNGE, LLC,
    *Plaintiffs,*

    v.

MAYOR JUSTIN ELICKER, GAGE FRANK, and
GOVERNOR NED LAMONT,
    *Defendants*.

No. 3:20cv464 (MPS)

**RULING ON MAYOR ELICKER'S AND GAGE FRANK'S MOTION TO DISMISS**

Plaintiffs Michael Amato, Joy Monsanto and their business, 50's Lounge, LLC, have sued the Governor of Connecticut, the Mayor of New Haven, and Gage Frank, a member of the Mayor's staff, in their individual and official capacities. The Plaintiffs allege that the executive orders the Governor issued in March 2020 in response to the pandemic restricting the size of social and recreational gatherings and requiring that restaurants serve food and beverages only for off premises consumption (executive orders 7, 7D, 7G, and 7N) are unconstitutional. (Counts 8 – 12.) As to Mayor Elicker, the Plaintiffs allege that the executive order he issued prohibiting "gatherings of more than 10 people for social and recreational activities" violated their First Amendment rights to freely assemble and associate.[1] (Count 5 - 6.) As to both the Mayor and Frank, the complaint alleges First Amendment retaliation and violation of the Equal Protection Clause of the Fourteenth

---

[1] The Plaintiffs filed a motion for temporary restraining order and preliminary injunction seeking to stay the enforcement of orders issued by Governor Lamont and Mayor Elicker they claimed interfered with their business and their constitutional rights of assembly and association. I denied the motion. ECF No. 32. The Plaintiffs thereafter twice amended their complaint. The operative complaint is the Third Amended Complaint. ECF No. 62.

Amendment. (Counts 5 - 7.)[2] In addition, the Plaintiffs assert against the Mayor and Frank state law claims of defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy by false light. (Counts 1 – 4.)

Governor Lamont filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF No. 60. I granted the Governor's motion to dismiss, and assume familiarity with the ruling. ECF No. 69. Mayor Elicker and Frank also filed a motion to dismiss. ECF No. 58.[3] For the reasons set forth herein, the motion is granted.

## I. FACTUAL ALLEGATIONS

The Third Amended Complaint sets forth the following factual allegations, which the Court accepts as true for purposes of this ruling.

Joy Monsanto and Michael Amato own and operate a restaurant in the "Westville" neighborhood of New Haven called the 50's Lounge, LLC. ECF No. 62 at ¶¶ 9-10. For many years, the Plaintiffs have specialized in blight-busting development and community renewal projects. *Id.* at ¶ 10. As a female of color, Monsanto confronted racism and adversity in opening her restaurant. *Id.* In 2017, she obtained a special exception to open a restaurant with a full-service liquor license. *Id.* at ¶ 11. Since that time, the 50's Lounge has served the community without incident and has established a reputation for affordable fine dining in an area once famous for dereliction. *Id.* at ¶ 12. The restaurant has hosted events for political opponents of Mayor Elicker. *Id.*

---

[2] Although the subheadings introducing counts 5 – 7 suggest that these counts are directed only against the Mayor, the allegations of retaliation and equal protection violations in these counts refer to the "municipal defendants," which the Court understands to refer to the Mayor and Frank.
[3] Mayor Elicker and Frank incorporate the arguments in their prior submissions, ECF Nos. 34, 45, 53, and the Plaintiffs in their opposition, ECF No. 64, do the same. ECF No. 51.

On March 10, 2020, in response to the pandemic, Governor Lamont declared a public health emergency and civil preparedness emergency under Conn. Gen. Stat. §§ 19a-131a and 28-9.[4]

On March 12, 2020, Governor Lamont issued Executive Order 7, which prohibited "gatherings of 250 people or more for social and recreational events." *Id.* at ¶ 19.

As the coronavirus began to take hold in Connecticut, the Plaintiffs decided to close the restaurant on March 15, 2020. *Id.* at ¶ 13.

On March 16, 2020, the Governor issued Executive Order 7D, which prohibited gatherings of 50 or more people. It also placed limits on restaurant, bar, and private club operations, stating that "any restaurant or eating establishment and any location licensed for on-premise consumption of alcoholic liquor . . . shall only serve food or non-alcoholic beverages for off-premises consumption." Executive Order 7D at 2. ECF No. 62 at ¶ 20.[5]

On March 16, 2020, apparently following a meeting attended by Mayor Elicker and his staff, Monsanto began receiving calls asking why the 50's Lounge remained open and "hosting large gatherings." *Id.* at ¶ 14. Monsanto told the callers that the 50's Lounge had been voluntarily closed since March 15. *Id.*

On March 19, 2020, Mayor Elicker issued Emergency Order No. 4 (the "Ten-Person Order"), which provides:

> [P]ursuant to the powers and duties granted in the Connecticut General Statutes and the Code of Ordinances of the City of New Haven, in response to the civil preparedness and public health emergency now facing the City of New Haven, and

---

[4] The Court takes judicial notice of the contents of the Governor's and Mayor's orders. *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss.")
[5] The Governor's Executive Order 7G, issued March 19, 2020, modified Executive Order 7D to allow restaurants and bars to sell alcohol for off-premises consumption provided it was sold in a sealed container and accompanied by an order of food. *Id.* at ¶ 21.

3

in accordance with the advice of the City's public health officials, effective Friday, March 20, 2020, at 12:01 a.m., gatherings of more than 10 people for social and recreational activities, including but not limited to, community, civic, leisure, and sporting events; parades; concerts; festivals; movie screenings; plays or performances; conventions; and similar activities, are prohibited.

Emergency Order No. 4, at 2.[6]

On March 20, 2020, the Plaintiffs saw Mayor Elicker on a local TV station, in front of City Hall, claiming that the 50's Lounge was endangering the health and welfare of its community and customers by violating the Mayor's order limiting gatherings to no more than ten people. *Id.* at ¶¶ 15, 17. At the behest of Mayor Elicker, Frank sent the TV station a photograph taken inside 50's Lounge that Elicker claimed was the impetus for him "to take action." *Id.* at ¶¶ 16, 33. The photo shown on the broadcast had the date blurred out but the Plaintiffs recognized the photo as having been taken many days earlier, at a party held at 50's Lounge prior to its closing and prior to the ten-person order. *Id.* at ¶ 16. The Defendants knew that the picture depicted events several weeks prior to the outbreak of the pandemic. *Id.* at ¶ 32. During the TV broadcast, the Mayor declared that he "just sent a police officer to Nica's[7]," had "complaints about 50's on Fitch,"[8] and would "continue to highlight the business[es] that are not complying with our orders....Call police if you see anyone breaking the rules ... you need to cooperate to keep your customers and community safe." *Id.* at ¶ 17.

Mayor Elicker and Frank had no personal knowledge that the Plaintiffs were operating their business in violation of any laws, orders, or regulations. *Id.* at ¶ 30. They knowingly made false allegations of criminal misconduct against the plaintiffs to the viewers of the TV broadcast

---

[6] https://documentcloud.adobe.com/link/track/?uri=urn%3Aaaid%3Ascds%3AUS%3A399de22f-5c51-411f-9a15-9fd5fd6bb0b5&pageNum=1#pageNum=1
[7] Nica's appears to refer to Nica's supermarket. ECF No. 34-1 at 6.
[8] The parties understand the allegation to refer to the 50's Lounge LLC, which is located on Fitch Street in New Haven.

and have since repeated the defamatory statements to others, resulting in a loss of reputation and business as well as the plaintiffs being viewed with suspicion by friends and acquaintances, and suffering emotional distress. *Id.* at ¶ 31. Mayor Elicker "weaponized growing fears about the pandemic to brutally attack the Plaintiffs[] and their business in a vulnerable time, hoping to curry favor with certain sectors of the electorate who had opposed the Plaintiffs' establishment, while simultaneously seeking retribution for the Plaintiffs' support of his political rivals." *Id.* at ¶ 18. Although the Defendants knew that the Plaintiffs had "proactively" closed the restaurant on March 15, they accused the Plaintiffs of criminal conduct in an effort to interfere with and "cripple" the Plaintiffs' business. *Id.*

On March 26, 2020, Governor Lamont issued Executive Order 7N, which directed that "social and recreational gatherings . . . of six (6) or more people . . . are prohibited throughout the State of Connecticut." Executive Order 7N at 4; ECF No. 62 at ¶ 22.

The Plaintiffs' voluntary closure of their restaurant on March 15, 2020 was a temporary measure to allow them to evaluate whether they could safely operate their business. ECF No. 62 at ¶ 23. They decided that they would "fully reopen their business approximately a week" after they closed it. *Id.* at ¶ 24. After further consideration, the Plaintiffs "realized that they could not reopen their business without violating Defendant Lamont's executive orders and risking substantial penalties including arrest, incarceration, fines, and the revocation of their business licenses." *Id.* at ¶ 25. The Plaintiffs "have lost, and are losing, an unsustainable amount of approximately $5,000 per week due to Defendant Lamont's prohibitory bar on their reopening." *Id.* at ¶ 26. Defendant Lamont's orders have made it financially impossible for the Plaintiffs to continue to operate their business profitably. *Id.* at ¶ 27. The financial loss that Defendant

Lamont's orders have imposed on the Plaintiffs has crippled their ability to remain in business, jeopardizing their ability to pay their employees and continue to exist as a business. *Id.* at ¶ 28.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is proper where "the district court lacks statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court may consider evidence outside the pleadings when deciding whether subject matter jurisdiction exists. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### B. Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

## III. DISCUSSION

### A. Rule 12(b)(1) Motion

#### 1. *Mootness*

The Defendants argue that the Plaintiffs' constitutional challenges to Mayor Elicker's Emergency Order No. 4 are moot because the Ten-Person Order subsequently was superseded by Governor Lamont's more restrictive Executive Order No. 7N, which prohibited social or recreational gatherings of more than 5 people statewide. ECF No. 45-1 at 7. As the Court noted in its TRO ruling, Plaintiffs' claims for injunctive relief as to the Mayor's order are moot in light of the Governor's subsequent executive order. ECF No. 32 at 8. But the Plaintiffs' complaint also seeks damages and the subsequent order issued by the Governor does not render moot the Plaintiffs' request for damages for past alleged constitutional violations. *See Dean v. Blumenthal*, 577 F.3d 60, 66 (2d Cir. 2009). The motion to dismiss Plaintiffs' constitutional claims for damages as moot is denied.

#### 2. *Standing*

The Defendants also challenge the Plaintiffs' standing. To have standing to sue in federal court, a plaintiff must show (1) injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief. *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (emphasis omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Particularized injuries "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, ___U.S.___, 136 S. Ct. 1547, 1548 (2016) (citation omitted). "A 'concrete' injury must be 'de

facto'; that is, it must actually exist." *Id.* At the pleadings stage, plaintiffs "must 'clearly . . . allege facts' demonstrating each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiffs do not dispute that the 50's Lounge LLC lacks standing to assert the First Amendment claims asserted in counts 5 and 6. ECF No. 51 at 17. In addition, the individual Plaintiffs lack standing to pursue any claims premised on the financial injuries alleged in the complaint. Only the 50's Lounge, LLC has standing to recover for those injuries.[9] ECF No. 45-1 at 8. *See Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) ("[A]bsent a direct individual injury, a company's member lacks standing to sue for an injury to the company"); *O'Reilly v. Valletta*, 139 Conn. App. 208, 214 (2012) ("a member or manager [of an LLC]. . . may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company."); *Rivera-Maurice v. Lamont*, No. X06UWY206056982, 2020 WL 8455542, at *5 (Conn. Super. Ct. Dec. 7, 2020) (plaintiffs lack standing to assert claims arising from harms allegedly suffered by their corporate entities). Therefore, I dismiss counts 5 and 6 as to the 50's Lounge, LLC and any claims based on financial injuries to the individual Plaintiffs.

Mayor Elicker argues that the individual Plaintiffs also lack standing to pursue their First Amendment claims in counts 5 and 6 challenging the constitutionality of the Mayor's Ten-Person Order because they have failed to allege facts suggesting that they have suffered an injury-in-fact. ECF No. 45-1 at 4, 8. I agree.

---

[9] In any event, as the Mayor points out, the complaint attributes the financial injuries to Governor Lamont's orders – specifically Executive Order No. 7D, which required that restaurants serve food and beverages only for off premises consumption. ECF No. 34-1 at 23; ECF No. 53 at 6; *see* ECF No. 62 at ¶ 25 (alleging that Plaintiffs "could not reopen their business without violating Governor Lamont's executive orders"); ¶ 26 ("Plaintiffs have lost and are losing an unsustainable amount of approximately $5000 per week due to Defendant Lamont's prohibitory bar on their reopening"); ¶ 27 ("Defendant Lamont's orders have made it financially impossible for the Plaintiffs to continue their business profitably").

8

"Two types of injuries may confer Article III standing for First Amendment challenges." *Libertarian Party of Connecticut v. Merrill*, No. 3:15CV1851(JCH), 2016 WL 10405920, at *4 (D. Conn. Jan. 26, 2016). "The first occurs when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'" *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "The second occurs when a plaintiff is 'chilled from exercising her right to free expression or foregoes expression in order to avoid enforcement consequences.'" *Id.* (quoting *Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014)) (internal quotation marks and citation omitted).

The Plaintiffs allege neither of these injuries. The complaint alleges that "Defendant Elicker's Ten-Person Order is an unconstitutional restriction on the Plaintiffs' liberty and right to assemble" and their "right to freely associate with their customers and their friends." ECF No. 62 at ¶¶ 49, 52. Despite amending their complaint three times, Plaintiffs have not provided specific factual allegations as to how they have been affected or their constitutional rights burdened. *Seidemann v. Pro. Staff Cong. Loc. 2334, Am. Fed'n of Tchrs. AFL-CIO*, No. 20-460, 2021 WL 79162, at *1 (2d Cir. Jan. 11, 2021) ("[S]tanding requires more than a mere allegation that an unlawful state of affairs exists. To have standing, a plaintiff must show that he or she has suffered an injury in fact.") The Plaintiffs' complaint simply does not show how the Ten-Person Order impinged on their First Amendment rights – there are no allegations as to their attempts to assemble, associate, or meet with anyone. Nowhere do they allege facts suggesting that they "inten[ded] to engage in a course of conduct arguably affected with a constitutional interest" or that any protected activity has been chilled or forgone. They therefore have not alleged an "actual" or "imminent" injury. Without any specific allegations of harm, Plaintiffs have not pleaded the

"necessary allegations of demonstrable, particularized injury" required to assert First Amendment claims against the Ten-Person Order. *Warth v. Seldin*, 422 U.S. 490, 508 (1975).

In sum, all the Plaintiffs lack standing as to their claims that the Ten-Person Order violated their rights to assemble and associate and the LLC also lacks standing as to the First Amendment retaliation claims.

**B.    12(b)(6) Motion**

Even if the Plaintiffs had adequately pleaded standing as to their First Amendment claims, those claims would still have to be dismissed because they do not meet the standard of plausibility. The Equal Protection claim also fails to state a plausible claim.

1. *First Amendment Claims*

In counts 5 and 6, Plaintiffs Michael Amato and Joy Monsanto allege that Mayor Elicker's Ten-Person Order "is an unconstitutional restriction on their liberty and right to assemble" and "right to freely associate with their customers and their friends" in violation of the First Amendment. ECF No. 62 at ¶¶ 49, 52.[10] The Plaintiffs assert the same claims as to the Governor's orders – including executive order 7N, which was more restrictive than the Ten-Person Order. In his motion to dismiss, the Governor argued that the Plaintiffs fail to state cognizable First Amendment claims because (1) the complaint does not allege that the Plaintiffs were engaged in any constitutionally protected expressive conduct and (2) the order limiting the size of gatherings is a content-neutral restriction that survives intermediate scrutiny and does not violate the First Amendment. The arguments made by the Governor in his motion to dismiss, which the Plaintiffs addressed in their opposition, are the same ones the Mayor makes here. ECF No. 34-1 at 28 - 30; ECF No. 45 at 9. The allegations, analysis, and conclusion are no different here. For the reasons

---

[10] The Plaintiffs assert these claims as to the Governor's executive orders in counts 8 and 9.

set forth in the Court's ruling on the Governor's motion to dismiss, I agree that the complaint fails to state plausible First Amendment claims. See ECF No. 69 at 11 - 16.

2. *First Amendment Retaliation*

Counts 5 and 6 also allege that the defendants' "acts and omissions - namely their statements and their dissemination of media" were in retaliation for the Plaintiffs' exercise of their First Amendment rights to freely assemble and associate "with the Municipal Defendants' political opponents prior to the pandemic and during the pandemic." ECF No 62 at ¶¶ 50, 55. The defendants argue that the complaint fails to state a plausible retaliation claim and should be dismissed. ECF No. 45-1 at 9. The Plaintiffs do not respond to the defendants' arguments, which is, by itself, grounds for dismissal. "When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned." *Massaro v. Allingtown Fire District*, No. 3:03cv136(EBB), 2006 WL 1668008, at *5 (D. Conn June 16, 2006). *See also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."). Accordingly, the Plaintiffs have abandoned any retaliation claims. Even assuming they have not, however, dismissal would be appropriate because, as set forth below, the complaint fails to allege facts showing a causal connection between the Plaintiffs' allegedly protected conduct of associating and assembling with the Mayor's "political opponents" and the defendants' alleged retaliatory acts of defamation in March 2020.

Plaintiffs claiming retaliation in violation of the First Amendment "must plausibly allege that '(1) [their] speech or conduct was protected by the First Amendment; (2) the defendant took

11

an adverse action against [them]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)). The Plaintiffs do neither. They allege only that the 50's Lounge "hosted events for political opponents" of Mayor Elicker. ECF No. 62 at ¶ 12. They allege no dates or other facts regarding these "events." They do not even allege facts suggesting that the Mayor was aware that they had hosted these events. The complaint does not set forth facts that make it plausible that the Plaintiffs' hosting of events for Mayor Elicker's political opponents caused any of the defendants' alleged retaliatory acts in March 2020.[11] *See Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, 637 F. App'x 16, 19 (2d Cir. 2016) (dismissing First Amendment retaliation claim for failure to sufficiently allege causation because "[n]o plausible inference of causation based on temporal proximity can be drawn from the passage of a year or the passage of some undefined period."); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 155 (E.D.N.Y. 2018) (dismissing First Amendment retaliation claim for failure to allege a causal connection where plaintiff failed to

---

[11] Although Plaintiffs make a conclusory allegation that the Mayor and Frank retaliated against them for assembling and associating with the Mayor's "political opponents both prior to the pandemic and during the pandemic," ECF No. 61 ¶¶ 50, 55, this vague reference is unsupported by any factual allegations. It also does not specify what Plaintiffs mean by "during the pandemic." If anything, the complaint suggests that the pandemic began on or about March 15, 2020, when the Plaintiffs voluntarily closed their restaurant. (ECF No. 62 ¶ 13 ("[A]s the Coronavirus crisis began to take hold in Connecticut," Plaintiffs decided to close their business.) The alleged retaliation took place five days later (ECF No. 62 ¶ 15), but the complaint does not suggest that Plaintiffs, who had closed their business voluntarily, assembled or associated with the Mayor's "political opponents" between March 15 and March 20.

allege sufficient facts to allow the Court to infer intent either directly or through temporal proximity). Because the complaint offers no suggestion as to when the allegedly protected activity - hosting events for the Mayor's political opponents - occurred, no temporal inference of causation arises, and the motion to dismiss Plaintiffs' retaliation claim must be granted.

   3. *Equal Protection*

Count 7 alleges that Mayor Elicker and Frank violated the Plaintiffs' right to equal protection. It incorporates paragraphs 1 through 18, which concern the alleged defamatory acts and the Mayor's Ten-Person Order, and paragraphs 29 through 55, which are counts asserted as to Mayor Elicker and Frank.[12] ECF No. 62 at ¶ 56. In addition, under the heading of count 7, the Plaintiffs allege that: Monsanto encountered "significant racially-motivated opposition against her personally regarding the 50's Lounge project"; the Plaintiffs hosted events for political opponents of Defendant Elicker; and Mayor Elicker and Frank "publicly slandered and defamed the Plaintiffs because, at least in part, of Plaintiff Monsanto's race and the Plaintiffs' actions in restoring minority communities and supporting political opponents of Defendant Elicker." ECF No. 62 at ¶¶ 60 - 62.

The Plaintiffs' brief makes no mention of racial discrimination in count 7 and states instead that the Plaintiffs are asserting a "class of one" equal protection claim. ECF No. 51 at 26. To state a "class-of-one" claim, the Plaintiffs must allege that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (internal quotations omitted). "While a plaintiff is not required to proffer evidence of similarly situated [comparators] at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the

---

[12] It does not incorporate the allegations concerning the Governor's orders, ¶¶ 19 – 28.

comparators are similarly situated." *Farmington-Girard, LLC v. Plan. & Zoning Comm'n of City of Hartford*, No. 3:17CV1915(MPS), 2019 WL 935500, at *14 (D. Conn. Feb. 26, 2019). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston*, 610 F.3d at 59 (internal quotation marks and citation omitted).

The Defendants argue that the Plaintiffs' equal protection claim is legally insufficient because the Plaintiffs do not allege that they have been treated differently than other comparators with whom they have an extremely high degree of similarity. ECF No. 34-1 at 31; ECF No. 45-1 at 10; ECF No. 58-1 at 8.

In their brief, the Plaintiffs contend that Mayor Elicker's Emergency Order No. 4 violated the Equal Protection Clause because it "discriminated against identically similarly situated parties without any rational basis." ECF No. 51 at 26. This was so, according to the Plaintiffs, because the Ten-Person Order was more restrictive than Governor Lamont's Executive Order 7D, which allowed gatherings of up to 50 people and as a result, "businesses in neighboring towns were able to operate much more efficiently under the Governor's 50-person restriction." ECF No. 51 at 28.[13] Plaintiffs go on to say that the Ten-Person Order was an "additional restriction" that "injured the Plaintiff's [sic], virtually eliminating their ability to turn a profit and keep the doors of the 50's Lounge open, at a time when similarly situated restaurant owners in neighboring towns were free to operate within the bounds of the Governor's much more reasonable and permissive orders." ECF No. 51 at 29. But that is not what is alleged in count 7 of the operative complaint, which instead contains unrelated allegations as to Monsanto's race and the fact that the Plaintiffs had

---

[13] As indicated, count 7 is directed at both the Mayor and Frank. There are no allegations that Frank had any involvement in the promulgation of Emergency Order 4.

14

hosted events for Mayor Elicker's political opponents. "It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss, and therefore [a] [c]ourt shall not consider the assertions raised for the first time in plaintiff's memorandum." *Thomas v. City of New York*, No. 12–CV–5061, 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013) (citations and quotations omitted). *See Shah v. Helen Hayes Hosp*., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases)").

Because Plaintiffs have apparently abandoned the equal protection claim of racial discrimination alleged in the complaint, Count 7 is dismissed.[14]

### 4. *State Law Claims*

There are no federal law claims remaining, and there is no diversity jurisdiction based on the citizenship of the parties. Plaintiffs' other claims arise under state law. As such, I decline to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011) ("[W]e have generally held that where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims."). Counts 1 – 4 are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (ECF No. 58) the federal constitutional claims - counts 5, 6 and 7 - is GRANTED. Because the Court declines to exercise

---

[14] Nor does Count 7 plead facts suggesting that the Mayor's and Frank's actions were motivated by racial animus or that they treated white persons differently with regard to the pandemic.

jurisdiction over the Plaintiffs' state law claims in counts 1 - 4, those claims are dismissed without prejudice. The Clerk of the Court is instructed to close the case.

    IT IS SO ORDERED.

Dated: April 15, 2021
       Hartford, Connecticut

                                                      /s/
                                        Michael P. Shea, U.S.D.J.